UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Sandra Sullivan, | ) | |
|     Plaintiff | ) | |
| | ) | |
| | ) | Case No. 04-4045 |
| | ) | |
| Smith Filter Corp., | ) | |
|     Defendant | ) | |

### ORDER

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the court is the Defendant's motion for summary judgment. The motion is fully briefed and I have carefully considered the arguments of both parties. For the following reasons, the motion is allowed.

### JURISDICTION and VENUE

This court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 12101 et seq. Venue is proper pursuant to 28 U.S. § 1391(b).

### SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999). The existence of "some alleged factual dispute between the parties," or "some metaphysical doubt," however, does not create a genuine issue of fact. Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir.1999). The proper inquiry is whether a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, e.g., Jordan v. Summers, 205 F.3d 337, 342 (7th Cir.2000).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. Waldridge, 24 F.3d at 922. Thus, as Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). See also, Local Rule CDIL 7.1(D).

Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence tending. First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(when the moving party has met its burden, non-moving party must do more than show some "metaphysical doubt " as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

If the facts indicate that no reasonable jury could find for the party opposing the motion, then summary judgment must be granted. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995), citing Anderson, 477 U.S. at 248. 1995). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential

to that party and on which that party will bear the burden of proof at trial, then summary judgment is proper. Celotex, 477 U.S. at 322; Waldridge, 24 F.3d at 920.

Although courts weighing summary judgment motions in employment cases must take special care not to invade the province of the fact finder, employment cases are governed by the same rules that govern any other summary judgment case, and they are equally amenable to summary disposition so long as there is no genuine dispute as to material facts. Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir. 1997); Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1031 (7th Cir. 1998). While intent and credibility are often critical issues in employment discrimination cases, there is no special version of Rule 56 that applies only to them. See, e.g., Alexander v. Wisconsin Dep't of Health and Family Serv., 263 F.3d 673, 681 (7th Cir.2001); Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1396 (7th Cir.1997); Haugerud v. Amery School Dist., 259 F.3d 678, 689 (7th Cir.2001).

## UNDISPUTED FACTS

The following recitation of facts is taken from the parties' Statements of Fact and the responses thereto, unless otherwise noted.

This case arises out of a reduction in force (RIF) taken by Defendant that plaintiff claims was pretext for discrimination on the basis of disability. Plaintiff Sandra Sullivan resides in East Moline, Illinois. Sullivan, who has been deaf since birth, learned lip reading and American Sign Language (ASL) in elementary school. She graduated from high school in 1977. She has been employed by Defendant Smith Filter Corporation for 25 years. Her initial hire in 1978 was through an agreement between the company and Skills, Inc., a not-

for-profit corporation that assists disabled persons by helping them find employment. In addition to plaintiff, the company had hired four other deaf persons.

Smith Filter Corporation is a family-owned company. It was founded over 60 years ago by Orbin Smith and his son Glenn Smith. The stock today is owned by Glenn's son Roger Smith, Roger's wife Norma, and their 2 daughters, Jana Lecander and Sharilyn Solis. Roger and his daughters have been the company's only officers and directors at all times material to this dispute.

At all relevant time, Smith Filter had a non-discrimination policy in effect that included prohibition of discrimination based on disability. The company voluntarily provided a deaf interpreter, at company expense, at group meetings. On a day to day basis, Smith Filter believed that plaintiff capably worked independently and that she could communicate with supervisors well enough by lip reading and writing notes; Smith Filter also believed that there was no need for her to communicate with co-workers. Although Sullivan agrees that she was able to perform her job, she does not agree that there was no need for improvement in communications with co-workers and supervisors, having experienced difficulties on several occasions.

Smith Filter is in the business of manufacturing three different types[1] of air and grease filters: the pleat filter, the fiberglass filter, and the polyester filter. Over the course of her employment, Sullivan had performed a number of duties, including driving forklifts, operating a scorer machine, a fiberglass pad machine, a cutting machine and a fiberglass

---

[1]The parties dispute whether the manufacture of the different types of filter constituted three different departments, a dispute which is purely semantic and is therefore not material for purposes of this motion, as is further discussed below.

5

framing machine. At the time of the Reduction in Force (RIF), Plaintiff was working on tasks associated with the manufacture of the polyester and fiberglass filters. Her job duties included but were not limited to cutting fiberglass and polyester pads, cutting grids for the throw-away filters, and cutting frames for filters.

In the Spring of 2003, Roger Smith and his daughters examined the company's financial performance over the preceding 3 years and learned that the manufacture of the fiberglass and polyester filters had lost an increasing amount of money each year. Because of that performance, Smith decided that the employees working solely on those two filters would be discharged. The RIF decision was implemented in the fall of 2003: five employees, including Sullivan, were discharged. Of the five, only Kay Scott had more seniority than Plaintiff and only Plaintiff was disabled. Each discharged employee was given severance pay in an amount based on tenure with the company. Sullivan's severance pay was $10,000 gross, plus all accrued vacation and sick time.

At the time of the RIF, the Employee Handbook of Personnel Policies of Smith Filter Corporation included a section entitled "Reduction in Workforce," which provided:

> If it becomes necessary to reduce the workforce, the selection of employees to be retained shall be based primarily on their relative efficiency and the necessity of the position entailed. All factors being equal, length of service shall be given consideration.

The RIF was not the end of Smith Filter's manufacture of polyester or fiberglass filters. The duties performed by the discharged employees were picked up by the remaining employees, and the same quantity of each type of filter was manufactured after the RIF as had been the case before the RIF. Many of the remaining employees had less seniority than Sullivan did.

For the most part, Sullivan's 25 year history with Smith was documented with perfectly acceptable evaluations, although there were several matters that arose during her final year with the company. In April of 2002, Plaintiff received a written disciplinary warning from Lecander for an incident in which she refused to do her job, swore at Lecander, and threatened to "see you in court." In August of 2003, Plaintiff received another written warning from her supervisor for refusing to perform a particular task, for "flipping her off", and for refusing to discuss the incident with supervisory personnel.

## AMERICANS WITH DISABILITIES ACT

PRIMA FACIE CASE

The ADA adopts the enforcement provision of Title VII actions. 42 U.S.C. § 12117(a). See, DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995). In this case, plaintiff proceeds under the indirect method using the familiar burden shifting method first stated in McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973).

A plaintiff proceeding under the indirect method must first make out a prima facie case. In McDonnell Douglas, a case involving defendant's failure to hire a racial minority, the prima facie case was articulated as: (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. Id.

As the Seventh Circuit has noted, however, the articulation of the prima facie case varies in special cases "to reflect the reality of the workplace." Bellaver v. Quanex Corp., 200 F.3d 485, 494 (7th Cir. 2000). Thus, in the context of a reduction in force (RIF) where

employees are laid off and not replaced (i.e. their positions eliminated entirely), a plaintiff's prima facie case is established by showing that (1) she is a member of a protected class; (2) she was adequately performing her job; (3) she was discharged or laid off in a RIF; and (4) similarly situated employees outside the protected class were treated more favorably than she. Amadio v. Ford Motor Co., 238 F.3d 919, 924 (7th Cir.2001); Cable v. Ivy Tech State College, 200 F.3d 467, 478 (7th Cir. 1999); McCreary v. Libbey-Owens-Ford Co., 132 F.3d 1159 (7th Cir. 1997); DeLuca, 53 F.3d at 797; Saladino v. Envirovac, Inc., No. 02C50323, 2004 WL 2309180, Oct. 12, 2004 (N.D.Ill.).

There is in this Circuit a line of cases discussing "mini-RIF's" or cases in which the duties of employees discharged in a RIF were not eliminated but were instead absorbed or assumed by remaining employees. See, Bellaver, 200 F.3d at 493; Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 693-4 (7th Cir. 2000); Krchnavy v. Limagrain Genetics Corp., 294 F.3d 871 (7th Cir. 2002). In such cases, the fourth element of the prima facie case is the very definition of mini-RIF, namely that Plaintiff was constructively replaced (her duties absorbed) by retained employees not in the protected class. This formulation of the prima facie case reflects the workplace reality that the discharged employee's position was not actually eliminated but that the terminated employee was in fact constructively replaced by remaining employees.

Defendant incorrectly argues that the mini-RIF standard applies only where one employee is discharged. It is true that most of these cases involved situations involving the discharge of only one employee. But the Seventh Circuit has clearly stated that mini-RIF's are not defined by the number of employees affected: "For purposes of deciding the proper prima facie case requirement to apply, our inquiry is dependent not on the number of

employees terminated but on whether [defendant] still needed [plaintiff's] job responsibilities to be performed." Paluck at 1012 n.5. See also, Michas, supra; Verwey v. Illinois College of Optometry, No. 02-1212, Aug. 9, 2002 (7th Cir.).

I conclude that the prima facie case applicable under the circumstances presented here (only five employees discharged with the assumption of their duties by retained employees) is the mini-RIF test. The first three prongs of that test are undisputed[2]. I find that the fourth element[3] too is satisfied, as there is certainly evidence that Plaintiff's duties were absorbed or assumed by employees not discharged in the RIF. I therefore also conclude that Plaintiff has stated a prima facie case.

EMPLOYER'S REBUTTAL OF THE PRIMA FACIE CASE

The employer may rebut the prima facie case by offering a legitimate (i.e. non-discriminatory) reason for its decision, which the plaintiff must then show to be pretextual. Cable, 200 F.3d at 478. In a RIF case, a plaintiff may challenge the RIF as a whole, or she may establish pretext by showing that the specific reasons given for including her in the reduction were pretextual even if the RIF as a whole was legitimate. See, Rummery v. Illinois Bell Telephone Co., 250 F.3d 553, 557 (7th Cir. 2001); Paluck v. Gooding Rubber

---

[2] Although initially defendant contested the first element of the prima facie case, in its Reply defendant conceded plaintiff's argument that she is *per se* disabled under the ADA: hearing is a major life activity, and deafness qualifies as a *per se* disability. Similarly, although defendant brings to the court's attention the disciplinary matters, there is no argument that Sullivan was not performing to the employer's legitimate expectations, and there is obviously no dispute that she was the victim of a RIF.

[3] Defendant also argues that Sullivan has failed to produce any evidence that she was discharged "because of" her disability. As noted above, that is not the proper formulation of the prima facie case, and the prima facie case as stated above contains no such element. Ultimately, of course, an ADA plaintiff must link her discharge with her employer's discriminatory intent. That is not an issue at this stage.

Co., 221 F.3d 1003, 1012-13 (7th Cir. 2000).  See also, Leffel v. Valley Financial Servs., 113 F.3d 787 (7th Cir. 1997)(plaintiff must address with specificity the articulated reason for the adverse employment action).

As explained by Smith Filter, the only basis for the RIF as a whole was economic. That is a non-discriminatory explanation for the RIF as a whole.  Smith Filters' explanation for including Plaintiff in the RIF is tied to the duties Plaintiff was performing at the time the RIF was implemented.  Those duties, according to Smith Filters, were limited to production of the unprofitable polyester/fiberglass filters.  That too is a non-discriminatory basis for including Plaintiff in the RIF.

PRETEXT

The defendant having articulated a non-discriminatory basis for the RIF and for plaintiff's inclusion their, it is therefore plaintiff's burden to show pretext.  An employer cannot use a RIF to disguise discrimination.   As the Seventh Circuit has noted, an otherwise-legitimate RIF, supported by a compelling reason unrelated to disability, does not entitle the employer "to use the occasion as a convenient opportunity to get rid of its disabled workers." Matthews v. Commonwealth Edison Co., 128 F.3d 1194, 1195 (7th Cir. 1995).  On the other hand, to meet her burden of showing pretext, plaintiff must produce "significantly probative admissible evidence" from which it could be inferred that the employer's reason was false and that the actual reason was discriminatory.  Jones v. Union Pacific RR Co., 302 F.3d 735 (7th Cir. 2002); King v. Preferred Technical Group, 166 F.3d 887,892-93 (7th Cir.1999).

Pretext requires more showing that a decision that was "mistaken, ill considered or foolish," and so long as the employer honestly believes the reasons given, pretext has not been shown.  Jordan v. Summers, 205 F.3d 337, 343 (7th Cir. 2000).  This Court does not sit

as a "super-personnel department" to examine business decisions for propriety. Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000); Nawrot v. CPC, 277 F.3d 896, 906 (7th Cir. 2002); EEOC v. Armstrong World Ind., 185 F. Supp. 2d 932, 937 (C.D.Ill.2002).

To establish pretext, the plaintiff must prove (1) the employer's explanation has no basis in fact; (2) its explanation was not the real reason for the termination; or (3) the stated reason was not sufficient to justify the termination. Hoffman-Dombrowsky v. Arlington Intern., 254 F.3d 644, 652 (7th Cir. 2001). See also, Adieani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998). Russell v. Acme Evans Co., 51 F.3d 64, 68 (7th Cir. 1995); Jordan v. Sommers, 205 F.3d 337, 343 (7th Cir. 2000). These standards apply in RIF cases as they do in any other discrimination case. See, Krchnavy, 294 F.3d at 876; Ritter v. Hill 'n Dale Farm, Inc., 231 F.3d 1039, 1044 (7th Cir. 2000).

As mentioned above, there are two possible ways to challenge a RIF - a facial challenge that the RIF as a whole was discriminatory or a challenge to the inclusion of the plaintiff in the RIF based on a discriminatory reason. In this case, the plaintiff has not explicitly stated which argument she is pursuing. To the extent that she might be arguing that the entire RIF was discriminatory, her argument must fail. She was the only disabled employee discharged in the RIF. Moreover, she has introduced absolutely no evidence contradicting the employer's evidence of financial loss stemming from the manufacture of these two types of filters. Any facial challenge to the RIF would be doomed.

Plaintiff's primary theory is that her inclusion in the RIF was discriminatory and that the employer's explanation - the employees let go in the RIF were those working primarily on the two unprofitable filter types - was pretext for discrimination. As evidence of pretext, Plaintiff first points to what she sees as an untruth, namely that the "Department" of

11

polyester/fiberglass filters was eliminated. According to Plaintiff's evidence, there was no such "department." It is true that the employer has alternatively referred to a "Fiberglass Department" and a "Fiberglass/polyester part of the Disposable Department." But this ambiguity about whether to call this group of five discharged people a department and if so the proper title thereof is an issue completely immaterial to the issue of pretext. The difference in semantics is not proof of pretext and it does not establish a "lie".

Plaintiff also relies on an affidavit from Kay Scott, one of the others whose employment was terminated in the RIF. According to Scott, she worked in the shipping department "loading boxes for shipment" of all three types of filters, thereby belying the employer's claim that the terminated employees all worked on polyester and/or fiberglass filters[4]. This goes nowhere to prove pretext. If the company is eliminating four positions related to manufacture of two types of product, certainly there will be less product to ship or other efficiencies that can be made. There is nothing unreasonable or devious about eliminating a corresponding "shipping" position." Scott's affidavit provides no basis for the court to go behind the Smith Filters' decision to include Scott or the plaintiff in this RIF; using it for that purpose would require rank speculation as to the company's business-related explanation. The affidavit does nothing to bolster plaintiff's claim of pretext.

Plaintiff also characterizes as a lie the assertion in Defendant's Motion for Summary Judgment (at p.11) that after the RIF "the Company ceased making fiberglass and polyester filters." That statement appears to have been part of a summarization by defendant's counsel

---

[4]There is no dispute that the other three performed similar job duties as plaintiff was performing at the time of her discharge. While in the past plaintiff may have performed other duties, the employer's decision not to consider that factor was part of a business decision. It is not evidence of discrimination or pretext.

of statements that had been made by company officials; the record reflects that this statement was not made by any company official. For purposes of this motion, I disregard that statement and accept as true the fact that defendant used retained workers to continue the manufacture of filters formerly made chiefly by the employees terminated in the RIF.

Plaintiff's argument based on the Defendant's continued manufacture of these filters is not a challenge to Plaintiff's inclusion in the RIF, but a challenge to economic explanation for the RIF as a whole. While the employer continued to manufacture these filters after the RIF, it did so with 5 fewer employees, clearly accomplishing an economic savings, which was the only explanation for the RIF ever proffered by the employer. The absorption of Plaintiff's duties by retained employees does not, without more, support Plaintiff's argument that her inclusion in that RIF was based on discrimination.

Plaintiff also relies in part on the Handbook, but the Handbook is of no assistance to her. The express language in the Handbook maximizes the discretion of the employer in determining which employees should be let go in any possible RIF. The employer claims to have selected her because her primary job duties at the time of the RIF were in the polyester/fiberglass production areas. It is entirely immaterial that Plaintiff believes erroneous Smith Filter's ranking of the employees with respect to their job duties and their performance or that she disagrees with the employer's assessment of her job skills. And it is in the context of this discretion that defendant considered plaintiff's disciplinary problems. All other things being equal, for an employer to select for termination the employee with the most questionable disciplinary background is not in and of itself suspect and it does not create the inference of pretext.

She must produce significantly probative evidence that the employer used the RIF to cover up discrimination. There is no evidence of such a cover-up. For example, plaintiff has produced no evidence about the other three deaf individuals who apparently still work in other areas of the company, nor does she explain how this company, which hired her knowing she was deaf and for which she had worked for 25 years, suddenly changed its tune and decided to discriminate against her. In light of the undisputed facts including this company's history vis-a-vis this plaintiff's disability, it would be unreasonable speculation to infer from the scintilla of evidence on which plaintiff relies that this employer would spend $50,000 (the cost of severance pay) just to get rid of her because she was disabled. See, e.g., Ritter v. Hill'nDale Farm, Inc., 231 F.3d 1039, 1044 (7th Cir. 2000)(employer entitled to inference of no age discrimination by virtue of having hired plaintiff at age 63).

I conclude that this record is devoid of any meaningful, cognizable evidence of pretext and that plaintiff has therefore failed to meet her burden in opposition to the motion for summary judgment.

## CONCLUSION

I conclude that Plaintiff has failed to meet her burden with respect to establishing that the employer's explanation was pretext for discrimination. For that reason, the Defendant's motion for summary judgment [#18} is allowed. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiff.

ENTER this 12th day of October, 2005.

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE